52 CCPA

**Application of Jean P. ROSSELET, Oldrich K. Sebek and George B. Spero.**

**Patent Appeal No. 7334.**

United States Court of Customs and Patent Appeals.
July 1, 1965.

Eugene Retter, Gerard A. Blaufarb, Kalamazoo, Mich., for appellants.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of product claims 3 and 5 in application serial No. 701,967, filed December 11, 1957, for "Organic Compounds and Process." No claims have been allowed.

The invention relates to steroid compounds and, according to the application, is "particularly concerned with 6-methyl-16α-hydroxyhydrocortisone, 1-dehydro-6-methyl-16α-hydroxyhydrocortisone, 6-methyl - 9α - fluoro - 16α - hydroxyhydrocortisone, 1-dehydro-6-methyl-9α-fluoro-16α-hydroxyhydrocortisone, the 16, 21-diesters thereof, the 11-keto analogues and the esters thereof and a method for the production thereof." The application further says:

> The new compounds * * * are highly active adrenocortical hor-

mones having greater glucocorticoid activity than hydrocortisone or cortisone. In addition these compounds have diuretic activity and have salt-losing properties which make them especially well suited in the management of chronic congestive heart failure and in the treatment of cirrhosis of the liver, the nephrotic and adrenogenital syndromes and the treatment of eclampsia and pre-eclampsia.

The claimed invention, however, is narrower than the above broad description, the two claims reading:

3. 1 - dehydro - 6α - methyl - 16α - hydroxyhydrocortisone.

5. 1 - dehydro - 6α - methyl - 9α - fluoro - 16α - hydroxyhydrocortisone.

Thus, claim 5 defines the compound of the formula

and claim 3 defines the compound of the same formula except that the 9α-fluoro atom is replaced by hydrogen.

The references relied on are:

| | | |
|---|---|---|
| Bernstein (IV) | 2,789,118 | Apr. 16, 1957 |
| Bernstein (V) | J. Am. Chem. Soc. 78, 5693–4 | Nov. 5, 1956 |
| Spero (I) | J. Am. Chem. Soc. 78, 6213–4 | Dec. 5, 1956 |
| Spero (II) | J. Am. Chem. Soc. 79, 1515–6 | Mar. 20, 1957 |

There are four separate rejections: The rejection of *claim 3* "as unpatentable over Spero (I) in combination with Bernstein (IV)"; the rejection of *claim 5* "as unpatentable over Spero (II) in combination with Bernstein (V)"; and the rejection of *claim 5* "as unpatentable over each of the two Bernstein references * * *."

Spero (I) reports the results of studies on the 6-methylation of various steroids. The reference discloses 1-dehydro-6α-methyl-hydrocortisone which was found to be "sixteen times as active as hydrocortisone" in the "glycogen deposition (glucocorticoid) assay" without showing "salt retaining (mineralocorticoid) activity." This compound differs from the compound of claim 3 in lacking the 16α-hydroxy substituent. The reference says:

* * * demonstration of the absence of mineralocorticoid activity in the presence of high glucocorticoid activity for 6-methylhydrocortisone, the synthesis of which is presently described, was unpredictable and is of considerable interest. Extension of the study to the 1-dehydro series has resulted in the most pronounced selective enhancement of cortical activities reported to date. [Footnotes omitted.]

Spero (II) refers to Spero (I) as having "reported * * * the preparation of a number of 6-methylated analogs of adrenal hormones which show unusual potentiation of glucocorticoid activity

with no sodium-retaining properties" and says that "The group of 9α-fluoro- and 21-fluoro-6-methyl steroids reported herein represents a continuation of this work." 1-Dehydro-6α-methyl-9α-fluoro-hydrocortisone is disclosed and is included among those compounds showing "considerably greater glucocorticoid and anti-inflammatory activity * * * than does hydrocortisone in animal assays." This compound differs from the compound of claim 5 in lacking the 16α-hydroxy substituent.

Bernstein (IV) discloses, inter alia, 1-dehydro-16α-hydroxyhydrocortisone and 1-dehydro - 9α-fluoro - 16α-hydroxyhydro-cortisone and says the compounds "are useful as anti-inflammatory agents in the treatment of arthritis, asthma, burns, bursitis, and the like, and also in the treatment of skin disorders and collagen diseases."

Bernstein (V) additionally discloses that the 9α-*fluoro*compound of Bernstein (IV), is "about 13 times more active than hydrocortisone" in the rat liver glycogen assay and is one of "the most active glucocorticoids hitherto reported which * * * [is] devoid of sodium-retaining properties." The conclusion is reached that "16α-hydroxylation abolishes the sodium-retaining property of 9α-fluoro-steroids without destroying their glucocorticoid activity."

The following table summarizes the *structural* relationships between the claimed compounds and the pertinent prior art compounds, the base compound in each instance being 1-dehydrohydro-cortisone (prednisolone):

|  | 6α-methyl | 9α-fluoro | 16α-hydroxy |
|---|---|---|---|
| Claim 3 | X |  | X |
| Spero (I) | X |  |  |
| Bernstein (IV) |  |  | X |
| Claim 5 | X | X | X |
| Spero (II) | X | X |  |
| Bernstein (V) |  | X | X |

It should now be clear that the rejection of claim 3 as unpatentable over Spero (I) in combination with Bernstein (IV) and the rejection of claim 5 as unpatentable over Spero (II) in combination with Bernstein (V) present parallel issues, viz., obviousness of the claimed compounds in view of the respective Spero compounds, which differ from the claimed compounds solely in the absence of a 16α-hydroxy substituent, and in view of the respective Bernstein teachings which show that 16α-hydroxy substituents are found on closely related steroids, the Bernstein compounds themselves differing from the claimed compounds solely in the absence of a 6α-methyl substituent. Thus appellants are not, nor do they pretend to be, the first to 6-methylate or 16-hydroxylate steroids of the type here involved. What appellants have done is to provide hydrocorti-sones bearing *both* these substituents and, accordingly, novelty of the claimed compounds has been conceded.

While the issue could be stated, alternatively, as the converse of the above, we see no reason why our statement is not *a* proper interpretation of the examiner's rejection.

Appellants admit there are "gross structural similarities" between the compounds of claims 3 and 5 and the compounds of Spero and Bernstein, but argue that "one need look only to the recent decisions of this Honorable Court to ascertain that the obviousness of chemical compounds, even of homologs * * *, is no longer to be predicated solely on structural similarity. * * * Here, the superimposition or 'mechanistic overlaying' of the compounds of Bernstein and Spero is clearly inappropriate

to render the claimed compounds obvious * * *," citing In re Riden, Jr., 318 F.2d 761, 50 CCPA 1411 for the latter proposition.

We agree with appellants' admonitions against deciding questions of chemical obviousness on the basis of structure *alone*, whether by means of a "mechanistic overlay" or otherwise. However, we think appellants have failed to present adequate evidence to overcome a prima facie showing of obviousness by reason of the admitted "gross structural similarities" of the art compounds, coupled with the fact those compounds are shown to have utility *in the same area of pharmacological activity*.

During prosecution, appellants presented two affidavits, both by William E. Dulin, an employee of appellants' assignee, The Upjohn Company, Kalamazoo, Michigan, which convincingly establish that the compound of claim 3 is 4.7 times more effective as an anti-inflammatory agent than the closest compound of Bernstein (IV) and that the compound of claim 5 is 1.6 times more effective as an anti-inflammatory agent than the closest 9α-fluoro compound of Bernstein (V), also disclosed in Bernstein (IV). The board, after first finding the claim 3 compound to be structurally obvious, said:

> Although appellants have submitted data, in the Dulin affidavit filed January 6, 1960 * * * to show that the claimed compound has an anti-inflammatory activity 470% that of the Bernstein (IV) compound, they have made no comparison with the Spero (I) compound. In view of the fact that the Spero (I) compound is the well-known commercial product "Medrol" of appellants' assignee,[1] there appears to be no justification for appellants' failure to compare the claimed compound with the Spero (I) compound. It may be assumed that comparative

data was either available to appellants or readily obtainable. Lacking such comparison, there is no foundation for concluding that the claimed compound is an unobvious improvement over the Spero (I) compound. * * *

* * * * * *

The additional rejection of claim 5 on Spero (II) in combination with Bernstein (V) parallels the rejection of claim 3 on Spero (I) in combination with Bernstein (IV). Claim 5 differs from claim 3 in the presence of a 9α-fluoro substituent; the corresponding references differ in exactly the same respect.

* * * For reasons which will be evident from our treatment of claim 3, the rejection of claim 5 will likewise be sustained.

We agree with the board's analysis and decision. Clearly, the Spero references, especially in view of the Bernstein disclosures, give rise to a presumption of obviousness under section 103. The law, under such circumstances, is clear in requiring a showing of an unexpected property or properties compared to those prior art compounds which otherwise render the claimed compound obvious. Appellants have not made such a showing.

Appellants contend that a comparison with the Spero compounds is unnecessary since the Bernstein compounds are "closer" and a comparison with these compounds, showing greater effectiveness, has been presented. Their basis for this contention is two-fold. First the examiner has rejected one of the claims as unpatentable over each of the Bernstein references *alone*, but not on the basis of the Spero references alone. Second, a methyl substituent allegedly constitues a smaller difference (chemically speaking, we presume) than does a hydroxy substituent. Appellants are quite emphatic, however, in urging that the

---

[1]. Appellants have made no challenge of this statement, and we therefore accept it as correct.

addition of a methyl substituent to an otherwise unsubstituted carbon atom does not set up a "homologous series" and, consequently, so the argument goes, the issue here is unlike those found in cases in this court dealing with "homology" or "isomerism."

We will not delve into the question of *comparative* closeness of the prior art to appellants' compounds as we deem it unnecessary. Suffice it to say that the Spero compounds are, we think, *sufficiently close* to the claimed compounds to make the claimed invention prima facie obvious and, that being so, a showing of some unexpected effectiveness or property relative to *those* compounds is required to support a finding of patentability. The reason we believe the Spero compounds render the invention obvious within the meaning of 35 U.S.C. § 103 is that closely related 16-hydroxylated steroids are not unknown in the art, as evidenced by the Bernstein reference, and because all of these compounds are recognized in the art as having a great many physiological properties in common.

Appellants contend that the Patent Office has failed to consider the art which *they* have presented allegedly to show that 6-methylation or 16-hydroxylation *does not always* result in steroids having the activity attributed to those groups by the Spero and Bernstein references. We have examined the art of record as a whole but find appellants' cited art *alone* insufficient to overcome the strong suggestion of appellants' compounds which we see in the art cited by the examiner. We note particularly, for example, the very desirable results of 16α-hydroxylation as noted in our above discussion of Bernstein (V).

Finally, appellants contend that the combination of the Spero and Bernstein references "is improper for neither of them suggest the combination * * *." However, in substantial agreement with the solicitor, it is our view that the test of obviousness is not express suggestion of the claimed invention in any or all of the references but rather what the references taken collectively would suggest to those of ordinary skill in the art *presumed* to be familiar with them. These references are closely related in the same art.

Since we agree with the examiner's rejections of claims 3 and 5 on the combination of references, it is unnecessary to consider his rejection of claim 5 on each Bernstein reference alone.

In view of the many factors bearing on decisions of this kind and because of the frequency of appeals in this area of the law, we think it desirable, lest we be misunderstood, to point out some things this opinion does not hold. We do *not* herein hold, impliedly or otherwise, that *any* compound differing from the prior art solely by a hydroxy or methyl group is deemed prima facie obvious in view of that art and thus necessitates a showing of an unexpected effectiveness or property; that affidavits must be presented comparing the claimed compounds with *both* the primary and secondary reference compounds; that a showing of activity 4.7 and 1.6 times that of the prior art is insufficient as a matter of law to establish patentability; and that prior art cannot be effectively cited by appellants to rebut teachings or suggestions in prior art cited by the examiner.

The decision of the board is affirmed.

Affirmed.

WORLEY, C. J., concurs in the result.