54 CCPA

**Application of John WALKER.**

**Patent Appeal No. 7769.**

United States Court of Customs and Patent Appeals.

April 6, 1967.

John Walker, pro se.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection on prior art of claims 10–13, 15 and 16 in appellant's application[1] for

1. Serial No. 89,303, filed February 14, 1961.

"Improvements in Temperature Measuring Lances." No claim has been allowed.

In essence, the claimed invention consists of mounting an optical pyrometer on the upper end of an oxygen lance used in the LD (Linzer Dusenstahl) basic oxygen steel refining process. It is the function of the lance to supply the necessary oxidant to the melt and also to serve as a convenient sighting bore for the pyrometer. The combination of a conventional oxygen lance with an optical pyrometer assertedly provides a method and means for measuring the temperature of molten metal during the refining process.

The configurations of appellant's drawings are set forth below:

Fig. 1

Fig. 2

Fig. 3

Fig. 4

Fig. 5

The lance portion of the combination (figure 2) comprises a central tubular member 6, having oxygen inlet 10 and terminating nozzle 9. Tube 6 is surrounded by two additional tubular members 7 and 8 which provide a jacket for cooling water entering through means 11 and exiting through means 12. A conventional pyrometer P is mounted on top of the lance L structure so that the pyrometer has a line of sight down the center of the lance. Pyrometer mounting modifications are shown in figures 3–5. In figure 2 the pyrometer is mounted by means of flange 13 on top of the lance. In figure 3 the pyrometer is located in a housing 14 which includes oxygen inlet 10. The oxygen flowing over the pyrometer cools it and thus stabilizes its performance. The specification states: "In extreme conditions, the housing 14 can be provided with a water jacket 16," as shown in figures 4 and 5, for cooling the pyrometer. The lance L and pyrometer P in combination with converter C operate to introduce a stream of oxygen through inlet 10 into tube 6, producing a cooling effect on the pyrometer, keeping the vertical line of sight free from smoke and fumes and the surface of the molten metal in the impingement area free of slag, and refining the metal, thus enabling one to obtain continuous temperature readings for the reaction zone throughout the refining process.

Claim 10, the most specific of the appealed claims, reads as follows:

10. The combination of an oxygen lance and a temperature measuring device, said lance when in operation being suspended in substantially perpendicular alignment with, and above and apart from the upper surface of a body of molten metal, and comprising a plurality of tubular members arranged in substantially concentric relationship, said tubular members consisting of a central member providing a passageway for the passage of oxygen therethrough, a second member encircling said central member and being in spaced relationship thereto to form a cooling-fluid passageway between said central member and said second member, a third member encircling said second member and being in spaced relationship thereto to form a cooling-fluid passageway between said second member and said third member; a nozzle attached to and being in communication with the lower end of said central member and being axially aligned therewith, and being formed and proportioned thereto to restrict and control the impingement area of an oxygen discharge from said lance upon said upper surface of the body of molten metal relative to the intervening distance between said nozzle and said molten metal surface, said nozzle being also attached in fluid sealing relationship to the lower end of said third member, but having its interior surface spaced apart from the lower end of said second member whereby communication between said fluid-cooling passageways at the lower end of said lance is provided, cooling-fluid inlet and outlet means adjacent the upper end of said lance and being in communication with said fluid-cooling passagways, one with the inner and one with the outer whereby a continuous circulation of fluid can be maintained through said inlet down through one of said passageways, up through the other of said passageways and out through said outlet; an oxygen inlet adjacent the upper end of said lance and being in communication with said central member; said temperature measuring device comprising an optical pyrometer mounted at the upper end of said lance and having its line of sight substantially in axial alignment with said central member whereby the temperature of the molten metal in an oxygen blown converter, at the concentrated area of maximum oxidation can be continuously measured and recorded during the entire metal refining process.

Dependent claim 11 calls for a housing enclosing the pyrometer within the oxygen stream as shown in figure 3. Dependent claim 12 provides for a housing

with a water jacket, illustrated at 16 in figures 4 and 5. Method claim 13 relates to the use of the combined lance and pyrometer in the refining process. Apparatus claim 15 recites the combination broadly in terms of plural functional "means." Claim 16 calls for "a basic oxygen process lance" with open upper end and means for mounting the temperature measuring means (flange 13 in figure 2).

The references are:

| | | |
|---|---|---|
| Collins et al. (Collins) | 2,020,019 | November 5, 1935 |
| Dike | 2,232,594 | February 18, 1941 |
| Percy | 2,305,442 | December 15, 1942 |
| Michaux | 2,815,276 | December 3, 1957 |
| Bieniosek et al. (Bieniosek) | 2,828,956 | April 1, 1958 |
| Percy | 3,080,755 | March 12, 1963 |

The two Percy references will be hereinafter referred to as Percy (442) and (755), respectively.

Collins discloses a device for measuring temperatures of the melt in an open hearth furnace. A pyrometer is mounted for sighting down a tube with an insulated fore end immersed in a metal bath. Air under pressure is supplied to the tube through a conduit. Collins states that air is discharged from the end "immersed in the molten bath and therefore maintains the exposed metal surface at the end of the tube clean by blowing away the slag and metal which would otherwise enter said end."

It should be noted here that appellant discloses that his method of measuring temperatures may be utilized in open hearth furnaces as well as top blow converters.

Dike refers to Collins and discloses a more refined variation of the Collins arrangement. The patent is directed to a molten metal temperature measuring device, comprising a radiation pyrometer located at and aligned with one end of a tubular sighting member. Gases are introduced through an opening and flow down the sighting member to avoid the presence of smoke and fumes in said member. The circulating gas also cools the temperature measuring structure and keeps the lens surface clear of deposits. Dike's cooling arrangement comprises a water jacket and his pyrometer may be cooled by air or water.

Percy (442) relates to a method and apparatus for simultaneously refining molten metal and measuring the temperature thereof. A stream of oxidizing air is directed through the metal bath by means of a wind chest and air holes, thereby creating a reaction zone. An optical pyrometer is shown arranged in axial alignment with one of the air stream holes. An electrical signal is provided, which is fed to means for observing the intensity of the signal. The air stream keeps the pyrometer sight holes free of fumes and debris. The pyrometer may be cooled either by air or water.

Michaux referred to a prior proposal "to set up optical pyrometers or photometers to sight the metal bath in the bottom of the converter through one or a plurality of blast nozzles." He noted that such a process required special precautions. Michaux points out, however, that in such an arrangement "the optical pyrometer of necessity sights one part of the metal at full chemical activity,"

where the temperature differs considerably from the temperature in the remainder of the bath, "which alone is what the metallurgist is interested in." The patent teaches avoidance of this disadvantage by sighting through a tube and conical element which penetrates a blast nozzle of the converter. A neutral gas is passed through the tube into the melt "such that chemical reactions * * * are eliminated at the point sighted by an optical pyrometer," and where the sighting nozzle is "partially obstructed at the passage of the inert gas, oxygen can be passed through this nozzle momentarily to clear same."

Bieniosek discloses a lance structure comprising a plurality of tubular members arranged in concentric relationship. A central member provides a passageway for an oxygen stream, and a second pipe in combination with a third pipe provides a cooling fluid passageway with inlet and outlet means. A nozzle is in axial alignment and communication with the lower end portion of the central member. The nozzle is shaped to provide a predetermined angle of divergence of discharge. The lance, in operation, is spaced above the melt and is used to direct a stream of refining oxygen upon the surface, thereby creating a reaction zone.

Percy (755) shows his optical pyrometer secured and spaced apart from the housing structure allowing the passage of gas around the pyrometer. The immersed lower end of the temperature measuring apparatus is "removed from the cavity [made by the oxygen blast from a central lance] so that the oxidation taking place in this region will not give erroneous temperature readings."

The examiner considered claims 10, 15 and 16 unpatentable over Bieniosek in view of any one of Michaux, Collins or Dike. He noted that the portion of claim 10 which defines an oxygen lance was not only clearly shown by Bieniosek, but also admittedly old and known in the art. Dealing with that phase of claim 10 relating to the optical pyrometer with its line of sight in axial alignment with the central member, the examiner correctly pointed out that each of Michaux, Dike and Collins teaches the combination of an optical pyrometer which is aligned with and sights down a tubular portion containing a stream of oxidizing gas, and further that Michaux shows an optical pyrometer aligned with a tube and nozzle for continuously measuring temperature, wherein oxygen may be introduced down the sight tube. He further pointed out that in Dike and Collins the pyrometer is mounted at the upper end of, and in axial alignment with, the tubular portion.

With reference to the rejection above noted, the examiner, correctly we think, succinctly stated:

> What applicant has done and what he holds to be the crux of his invention is the combination of an optical pyrometer with a lance structure such that the temperature of the molten metal may be measured during the refining operation. But this is the combination shown by each of the secondary references. Clearly, it would be obvious for a skilled workman having the applied prior art before him to combine the Bieniosek et al lance with anyone of the secondary reference temperature measuring means to thereby achieve the recited [claimed] subject matter.

The examiner applied the same basic rationale in rejecting claims 11 and 12, adding Percy (755), however, for its showing of circulating gas around the pyrometer for cooling thereof. With reference to the jacket for the circulation of a cooling fluid recited in claim 12, the examiner applied Dike for his teaching that his pyrometer housing structure may include a water jacket.

Claim 13 was held unpatentable over either Percy (442) or Michaux, either reference further taken in view of Bieniosek. Most of the limitations in claim

13 were held to be substantially met by the comparable process of Percy (442) comprising the acts of directing a stream of oxidizing gas upon the surface of molten metal, thereby creating a reaction zone, maintaining a line of sight, and producing a signal in a temperature measuring device. The examiner reasoned that to modify the Percy (442) process by including the Bieniosek feature of using oxygen as the oxidizing medium and directing this medium against the upper surface at a predetermined distance therefrom, "is an obvious expediency which requires the exercise of only ordinary skill and which provides no new or in anyway unexpected results." It was furthermore noted that the recited step of producing a signal in a temperature measuring device is conventional and is clearly suggested by Michaux's pyrometer showing.

In affirming the examiner, the board adopted his position with "additional comments."

In its consideration of claim 10, which embraces the details of appellant's oxygen lance, the board observed that "[s]uch an oxygen lance is old" as shown by Bieniosek and pointed to appellant's specification which states that "except for the upper portion thereof, the structure indicated follows the usual conventional design." With reference to that phase of claim 10 which departs from the conventional design in that it provides the top of the lance with adapter flange means by which an optical pyrometer sensing head can be mounted on the lance, the board reasoned:

Since it is common practice to mount a temperature measuring means wherever it is desired to measure temperature, as disclosed by any one of Michaux, Collins et al. or Figure 8 of Dike, it is our opinion that it would be obvious to one skilled in the art to mount a temperature measuring means on the top of the lance with its line of sight in substantially axial alignment with the central member as shown in any one of the secondary references.

In its consideration of claim 11, which depends from claim 10 and sets forth, in substance, that the housing enclosing the temperature measuring device is spaced apart from that device to form a cooling chamber for passage of oxygen around the device, which cooling chamber communicates with the central chamber at the upper end thereof, the board noted that in Percy (755) the temperature measuring device is spaced from the wall which forms a cylindrical chamber around the device, and that gas admitted, by means therefor at the top of the chamber, would cool the device as it passed around same, and concluded that to connect the chamber formed by said wall to the upper portion of the tube forming the oxygen lance would be obvious to one skilled in the art.

In its consideration of claims 12 and 13, the board supplemented the views of the examiner, but in no way deprecated the treatment accorded these claims by him.

We have noted and considered appellant's reliance on Ex parte Kelley, 53 USPQ 682 (Bd.Apls.1941), to the effect that a reference showing the novel combination is required, rather than reliance by the examiner on selected "elements from various references which do not in their old environment have the same cooperative action."

We have here, however, the application of a plethora of references comprehensively and meticulously appraised by the examiner and the board, every one of which belongs, as stated by the examiner, "to a closely related field of activity" whose "structures are so similar that their combination is a natural and logical expediency." The examiner found, with affirmance by the board, and we agree, that the prior art, "the patents to Percy, Michaux, Dike and Collins et al. teaches the combination of an optical pyrometer and a tube or lance-like structure for supplying oxygen or at least an oxidizing gas to a molten metal surface."

Pointedly apposite here is the view expressed by this court in In re

Rosselet, 347 F.2d 847, 851, 52 CCPA 1533, 1538, wherein the court stated:

> * * * appellants contend that the combination of the [two] references "is improper for neither of them suggests[s] the combination * * *." However, * * * it is our view that the test of obviousness is not express suggestion of the claimed invention in any or all of the references but rather what the references taken collectively would suggest to those of ordinary skill in the art *presumed* to be familiar with them. These references are closely related in the same art.

While the record is convincing that accurate measuring of temperature of molten metal during the basic oxygen refining process poses a problem defying adequate solution, it is equally convincing in its total paucity of evidence that appellant's arrangement constitutes any solution thereto. There is no evidence of record to support the statement in appellant's brief that his "device is the only means presently available capable of performing such a task." As pointed out by the solicitor, both Michaux and Percy (755) indicate that appellant's arrangement should be incapable of accurately measuring desired representative temperatures.

██ We have set out at some length and weighed the analysis and evaluation of the cited references and the application of their teachings to the appealed claims by the examiner and the board, including in our consideration the affidavit of Clarke, which evaluates the teachings of Percy (755), but we are not persuaded that the board committed reversible error in holding the appealed claims unpatentable over the prior art within the purview of 35 U.S.C. § 103. The decision of the board is accordingly affirmed.

Affirmed.

SMITH, J., concurs in the result.