57 CCPA

**Application of Carl R. BETZ.**
**Patent Appeal No. 8213.**

United States Court of Customs
and Patent Appeals.
Dec. 4, 1969.

Richard K. Stevens, John H. Lewis, Jr., Washington, D. C., attorneys of record, for appellant. John A. Crowley, Jr., Francis J. Mulligan, Jr., New York City, Stevens, Davis, Miller & Mosher, Washington, D. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Joseph F. Nakamura, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, MATTHEWS, Judge, sitting by designation, and ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1, 9 and 19–26 in appellant's application for "Electrostatic Printing." [1] No claim has been allowed.

Illustrative of appellant's claimed invention, Figs. 1 and 2 of the application drawings are reproduced here:

[A 384]

The application discloses a method of electrostatic printing and apparatus for its execution. An image is formed, such as the letter "P", from dielectric (triboelectric) particles on a porous conductive plate 10 and transferred to a sheet of paper 36 interposed in an electrostatic field between the porous plate and a second conductive plate 32. The face of the porous plate is provided with

---

1. Serial No. 467,943 filed June 29, 1965. The application states that it is a continuation-in-part of appellant's copending application, serial No. 419,439, filed December 18, 1964.

a mask 14. Suitable dielectric pigment particles are drawn against the unmasked areas to form the image through application of a vacuum to the back of the plate by means of vacuum chamber 20. It is disclosed that the particles tend to cling to unmasked areas of the porous plate. Acoustical transducer 26 functions to dislodge the particles and drive them into the electrostatic field. Alternatively, a pulsed piezoelectric transducer or an electric generator serves to apply a shock wave or voltage pulse to porous plate 10, or the particles thereon.

Sufficiently illustrative of the appealed claims are method claim 1 and apparatus claim 9:

1. A method of printing including the steps of forming an image of tri-boelectric particles over an extended area, placing said image adjacent an electric field, and applying a sharp pulse to said image over said area to propel image into said field to cause said image to be transferred electrostatically toward a surface to be printed.

9. Apparatus for printing on a surface including in combination, means for forming an image of dielectric particles, means for establishing an electrostatic field between said image-forming means and said surface and means for applying a sharp impulse to said image-forming means to propel said particles into said field to cause said field to transfer said image to said surface.

The references are:

| Frohbach et al. (Frohbach) | 3,134,849 | May 26, 1964 |
|---|---|---|
| Kramer et al. (Kramer) | 3,180,256 | April 27, 1965 |
| Childress et al. (Childress) | 3,245,341 | April 12, 1966 |

Frohbach relates to an electrostatic-writing system whereby the writing operation is concurrent with the operation of scanning the original by well-known facsimile-scanning techniques. In the system an electric field is established between spaced electrodes. Pigment or toner powder is introduced into the electric field from one of the electrodes and transferred by operation of the field onto a writing medium being passed transversely through the field. The electrode for introducing pigment or toner into the electric field is in the form of a cone-shaped container with a small opening at the bottom for the emission of powder. It is pointed out that the "opening is made so small that no pigment powder or toner powder will pass through it, despite any external forces, unless the container * * * is vibrated." An electro-mechanical transducer serves to vibrate the container in response to signals derived from scanning copy. The patent states that this "transducer may be any of the types well known in the art, such as a crystal of either the piezoelectric or ferroelectric type, a magnetostrictive device, or an electromagnetic motor such as the voice coil of a loudspeaker." The pigment or toner powder "may be any of the types employed in xerography or printing."

Kramer discloses a printing apparatus and method in which printing is effected by application of a pulse energy to a rigid plate in contact with porous material containing a liquid printing medium. In one form of the invention, the porous material has a stencil on the side opposite the rigid plate for forming the desired wording or symbol to be printed. Ink is supplied by a reservoir, and the rigid plate forms a part of the

housing enclosing the porous material. The outside of the rigid plate is in contact with an impulse-generating device, such as an electrical solenoid. Actuation of the solenoid induces particles of ink to project across the gap between the porous material and the object to print the desired wording. The patent discloses an ultrasonic transducer or loudspeaker as other impulse-generating devices which may be used in lieu of an electrical solenoid.

Childress discloses an electrostatic printing apparatus in which a powder image is formed on the masked side of a porous conductive member by vacuum applied to the unmasked side. An electric field is utilized to transfer the image from the porous member to an image-receiving surface which may be spaced from the masked surface.

In aid of understanding of a pertinent form of the Childress' apparatus, Fig. 3 is reproduced below:

FIG. 3.

[A 383]

The porous member is in the form of a hollow cylinder 20, masked on its outer cylindrical surface 32, capped at both ends and rotated on a hollow perforated shaft connected to a vacuum source 24. The cylinder is rotated through a container 34 of electroscopic powder particles to form a powder image from particles drawn to open areas on the masked surface by vacuum inside the cylinder. Potential source 46 is connected between the cylinder and a conductive plate 44 to establish an electric field for transferring the powder image to a web 38 fed between the cylinder and plate to receive the image. To prevent application of a vacuum while the powder image is being transferred, two stationary walls 28, 30 are fixed on the hollow shaft inside the cylinder in the area beneath the plate. The patent points out:

It can happen that the ends of the walls 28, 30, which rub against the inner side of the cylinder 20, do not provide a good enough vacuum seal through poor fitting or wear. In such a case * * *, if the transfer force of the electric field is not strong enough a slight positive pressure of air may be fed to the V-shaped region from a positive pressure source 39,

through a pipe 41, which connects to suitably placed openings in the pipe 23.

Relative to the powder image, it is stated that:

It is interesting to note that the powder particles, when attracted to the porous surface adhere to this surface even after the vacuum is removed. They also adhere to one another despite the deposition on the surface to a considerable depth. The reason behind this is not clearly understood. It is believed to be either or both the triboelectric charge phenomenon as well as the fact that the powder particles are rather granular and adhere to one another simply due to the compaction of the particles.

All of the claims on appeal were rejected by the examiner as being unpatentable over Childress in view of Frohbach and Kramer. Additionally, claims 1, 9 and dependent claims 19, 20, 24 and 25 were rejected on Childress alone. As to all claims, the examiner applied the provisions of 35 U.S.C. § 103. Thus, the sole issue here is obviousness.

Method claims 1, 19 and 20 recite broadly the step of applying a sharp pulse to the image to propel it into the electric field. Apparatus claims 9, 24 and 25 recite broadly "means" for applying a sharp impulse to the image-forming means to propel the particles into the electric field.

As noted in our analysis of the Childress patent, it teaches that if the transfer force of the electric field is not strong enough, a source of air under positive pressure may be applied to the V-shaped region behind the image. It was the examiner's view, approved by the board, that the step of applying a sharp pulse to propel the image into the electric field may be accomplished by the positive pressure source 39 of Childress. This seems to us to be a rational conclusion. However, with the teaching of Childress that air under pressure may be used to supplement the transfer force of the electric field, if inadequate of itself to transfer the particles in the image areas, we can see nothing unobvious in introducing air under sufficient pressure to dislodge the particles so that they may be transferred by the electric field. It appears to us that Childress would suggest to one of ordinary skill in the art that the particles need to be dislodged by the statement therein that the particles in the image areas adhere to the porous surface even after the vacuum is removed with the clear inference that they need to be dislodged.

While Childress does not make express reference to a "sharp pulse," we think it apparent that a rapid change in pressure takes place resulting in the application of a relatively sharp single pulse to the image particles. Fig. 3 of the Childress drawings shows that the image passes directly from a vacuum to a higher pressure as it enters the V-shaped area.

Method claim 21 calls for an "acoustic pulse" and apparatus claim 22 specifies an "acoustic transducer." Frohbach teaches the combination of an acoustic pulse and an electric field for transferring particles of powder by dislodging the particles with the acoustic pulse and transferring the dislodged particles by means of the electric field. The acoustic pulse is produced by the "voice coil of a loudspeaker." Additionally, Kramer teaches the use of a "loudspeaker" as an impulse generating device for projecting particles of liquid printing medium from a porous printing member across a gap to the print-recording surface. The examiner concluded, and we agree, that it would be obvious from the teachings of Frohbach and Kramer to use an acoustic pulse and an acoustic transducer to produce the pulse in Childress. It has been noted that Childress teaches that the transfer force of the electric field may not be strong enough to overcome a slight vacuum and even after the vacuum is removed, the particles adhere to the surface of the porous member. Faced with the teachings of Frohbach and Kramer, the desirability of providing an acoustic transducer in Childress would,

in our view, be clearly obvious to one of ordinary skill in the art.

The examiner rejected claims 1, 9, 19, 20, 24 and 25 on the same combination of references and for the same reasons assigned in rejecting claims 21 and 22. Inasmuch as these claims are broader as to the pulse-applying step and means, we are of the view that the rejection of these is proper for the reasons above stated.

The remaining claims 23 and 26 are directed to the apparatus. Claim 23 specifies a piezoelectric transducer and claim 26 calls for an electrical "pulse generator." Frohbach teaches the use of the piezoelectric transducer as an alternative to the "voice coil of a loudspeaker." We can envision nothing unobvious in its use in Childress.

The electrical "pulse generator" called for in claim 26, considered in the light of appellant's specification, is no more than an auxiliary generator for augmenting the electric field momentarily to aid in starting the transfer of the particles. Childress discloses a source of potential 46 for establishing the electrical field. A generator, as a matter of common knowledge, is one of the most common sources of electric potential. Where the transfer force of the electric field is not of sufficient strength, it would be clearly obvious to increase the energy or to augment the field by adding a second generator to dislodge the particles.

We take note of appellant's argument that the references hereinabove discussed and relied on below do not suggest any reason for combining them and could only have been combined from hindsight from appellant's disclosure. On the basis of this record, we find this contention untenable. The references pertain to analogous art and taken together for what they reasonably disclose and teach, they render the claimed invention obvious to one of ordinary skill in the subject art. As was said by this court in In re Rosselet, 347 F.2d 847, 52 CCPA 1533:

* * * the test of obviousness is not express suggestion of the claimed invention in any or all of the references but rather what the references taken collectively would suggest to those of ordinary skill in the art *presumed* to be familiar with them.

We have considered the issues raised and arguments advanced by appellant and are not persuaded of reversible error in the decision of the board affirming the examiner's rejection of the claims on appeal. That decision is, accordingly, affirmed.

Affirmed.