57 CCPA

**Application of Jerold J. GOLNER and Wm. G. Baird, Jr.**
**Patent Appeal No. 8257.**

United States Court of Customs
and Patent Appeals.
May 14, 1970.

---

Edward J. Hanson, Jr., Duncan, S. C., attorney of record, for appellant; John J. Toney, Duncan, S. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Joseph F. Nakamura, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1, 2, 7 and 14–21 of appellants' application [1] on the basis of obviousness under 35 U.S.C. § 103 and the further rejection of claims 1, 2 and 14–16 under 35 U.S.C. § 112. No claims have been allowed.

## THE INVENTION

The invention relates to a process for heat sealing polyolefin films wherein, prior to the heat sealing step, the surfaces to be joined together are first oxidized and then one of those surfaces is coated with a particular adhesive lacquer composition. The films specifically disclosed and claimed are prepared from medium to high density homopolymers and copolymers of ethylene and propylene and have been oriented [2] in either one or two directions. The specification states that in prior attempts to heat-seal or bond together oriented films of these polymers, it was observed that at the

temperatures neceessary to provide a practical seal, the film would shrink in the heated areas causing puckering and weakness at the seal. Accordingly, the disclosure goes on, "[t]wo satisfactory classes of coating lacquers have been discovered, which when properly applied to oriented polyolefin films permit sealing at temperatures below that at which significant shrinkage occurs." In the first class of coating compositions, the resin comprises a copolymer of vinyl chloride and vinylidene chloride, and in the second the resin is a mixture comprising at least 80% by weight polyvinyl butyral, at least 19% polyvinyl alcohol and at least 0.3% polyvinyl acetate. Oxidative surface treatment of the films is accomplished using known methods, e. g., flame treating, and is said to secure better adhesion of the coating compositions. Several examples are set out showing effective heat sealing being carried out at temperatures of about 240° F.

Claims 7 and 18–21 on appeal are drawn to the process. The remaining claims are product claims. The broadest claim from each group is here reproduced as being illustrative:

1. A product comprising two oriented base film surfaces heat sealed together, said film selected from the group consisting of polyethylene having an average density above 0.925, irradiated polyethylene having an average density above 0.925, polypropylene, and copolymers of ethylene and propylene, both of said oriented base film surfaces having been modified by oxidation to improve adhesion of a coating and having only one such modified surface coated with a composition selected from the group consisting of (1) a copolymer of vinyl chloride and vinylidene chloride and (2)

1. Serial No. 96,072, filed March 16, 1961, for "Heat Sealing of Polyolefin Films."

2. Orientation refers to a technique wherein the plastic film, after the actual film-forming step, is heated and then stretched in a direction corresponding to either one or both of its coordinate axes, i. e., in a transverse or a longitudinal (machine)

direction. The polymer molecules actually become "oriented" in the direction in which the stretching is accomplished and certain physical and optical properties of the film are thereby enhanced. *See generally,* 9 Kirk-Othmer, Encyclopedia of Chemical Technology, Film Materials (2d Ed. 1966).

a composition comprising at least 80% of polyvinyl butyral, at least 19% polyvinyl alcohol and at least 0.3% polyvinyl acetate.

7. A process for heat sealing together areas of oriented films selected from the group consisting of polyethylene having an average density above 0.925, irradiated polyethylene having an average density above 0.925, polypropylene, and copolymers of etheylene and propylene, which comprises modifying the surface by oxidation of the said areas to promote adhesion of a coating thereto, coating only one of said modified surfaces which are to be heat sealed together with a coating composition selected from the group consisting of (1) a copolymer of vinyl chloride and vinylidene chloride and (2) a composition comprising at least 80% of polyvinyl butyral, at least 19% polyvinyl alcohol and at least 0.3% of polyvinyl acetate, and heat sealing said areas together.

## THE PRIOR ART

Swerlick,[3] the reference primarily relied on by the examiner, is directed to a process for producing high density polyethelene film which does *not* need to be surface treated before it is coated. The patent discloses that, ordinarily, polyolefins do have to be so treated and that flame treating is a common method for doing so. There is specific mention of polyvinyl butyral as a suitable polymeric coating as well as several examples demonstrating the coating of *both* sides of the polyethylene film with polyvinyl butyral and the heat sealing of this coated film to another strip of the same film similarly coated. The heat sealing was accomplished at a temperature of 185° C. (365° F.).

Keller et al.[4] discloses a process wherein polyethylene film is surface-oxidized and the treated surface is then coated with a vinylidene chloride polymer, which may be a vinylidene chloride-vinyl chloride copolymer. It is further pointed out that the oxidative treatment disclosed has been found to make polyethylene highly receptive and retentive of adhesives, including heat-sensitive polymeric adhesives. A process is disclosed which comprises coating certain areas of the treated film with a heat-sensitive adhesive so that opposed surfaces can be "readily heat-sealed" to form the gussetted bottom of a bag.

Traver[5] is drawn to a technique for rendering the surface of high density polyethylene adherent to such things as ink and adhesive by exposing the surface to an electrostatic field. The patent states that this surface treatment differs from thermal (flame) treatment in that it "yields no evidence of oxidation." A process is disclosed wherein two laminae of polyethylene film are joined together by first modifying the surfaces to be joined together by the disclosed electrostatic technique, applying adhesive to "one or both of the treated surfaces which are to be joined," and then bringing the two films or laminae into contact with each other, with the adhesive or treated sides together.

Meier[6] discloses that vinylidene chloride copolymers, including copolymers with vinyl chloride, are useful as heat-sealable coatings and may be applied to base materials such as polyethylene from either solvent solution or aqueous dispersion. The patent is concerned with overcoming the strong tendency of the coatings to adhere to one another when pressed together.

Grimminger et al.[7] is directed to a process for improving the adhesiveness of polyolefins, "for example polyethylene, polypropylene and copolymers of ethylene

3. U. S. Patent 2,941,254, issued June 21, 1960.

4. U. S. Patent 2,968,576, issued January 17, 1961.

5. U. S. Patent 2,910,723, issued November 3, 1959.

6. U. S. Patent 2,748,027, issued May 29, 1956.

7. U. S. Patent 3,036,930, issued May 29, 1962, on an application filed December 22, 1958.

and propylene," by treating the surfaces thereof with a mixture of sulfur dioxide and chlorine with simultaneous irradiation. The disclosed technique is said to be an improvement over earlier methods such as heating the surface of the polyolefin or bombarding it with electrons. Several examples show effective adherence of polymeric adhesives and lacquers to both oriented and non-oriented polyolefin films treated according to the disclosed technique.

A publication by the Bakelite Co.[8] is also in the record showing the exact polyvinyl butyral composition claimed by appellants and stating: "The commercially important vinyl butyral resins are actually partial butyrals of polyvinyl alcohol, and retain, some unreacted polyvinyl alcohol groups which contribute to the many desirable properties of these resins." The resins are characterized as having "excellent adhesion to a wide variety of non-porous surfaces."

## THE REJECTIONS

The product claims were rejected by the examiner under 35 U.S.C. § 103 "as unpatentable over Swerlick in view of Traver and further considered with Grimminger et al." Where the claims were limited to the vinylidene chloride copolymer coating (claims 14, 16 and 17), the Grimminger et al. reference was said to be considered "in view of either Meier or Keller et al." Where polyvinyl butyral was the only coating recited (claim 15), Grimminger et al. was considered "in view of the Bakelite publication."

The examiner maintained that Swerlick could be considered to disclose the claimed structure at least insofar as it discloses two polyolefin films which have been treated to facilitate and improve the adhesion of a heat sensitive adhesive and bonded together with a heat sensitive adhesive. From Traver, he thought it to be obvious that the method limitation of

coating only one of the two opposing surfaces to be bonded is the equivalent of coating both the opposing surfaces, and from Grimminger et al., that oriented as well as non-oriented polyolefin films may be bonded. The Keller et al. and Meier patents were "relied on as disclosures of vinylidene chloride-vinyl chloride copolymers which may be applied to a polyolefin film and used as a heat sealable adhesive." The Bakelite publication was stated to make "it clear that the polyvinyl butyral adhesive of Swerlick may be considered to constitute appellants' specific adhesive composition." Finally, the examiner stated: "the selection of one heat-sealing adhesive for another here is thought to be a matter of choice." The board affirmed these rejections with the following comments:

* * * We agree with the Examiner that Swerlick's contribution of a critical temperature range for forming the polyethylene film is an improvement over gas-flame treatment of polyethylene, and that it is quite obvious that the gas-flame treatment is still useful. The claimed polyvinyl butyral adhesive appears to us to be the same as that mentioned in Swerlick, for the reasons stated by the Examiner in his description of the Bakelite Company publication. Traver shows that applying an adhesive coating to only one of a pair of surfaces to be bonded is old. Moreover, this expedient is purely a process limitation that cannot be detected by examination of the finished article, and hence is of little patentable significance in these claims.

The claims drawn to the process (7, and 18–21) were rejected "as unpatentable over Keller [et al.] considered with Grimminger et al. and further in view of Swerlick." Pointing out that Keller et al. discloses the flame treatment of polyethylene film which may be coated with a vinylidene chloride-vinyl chloride co-

8. "Bakelite" Vinyl Butyral Resins, Technical Release No. 11, dated July 1954 and stated by the examiner and board to have been published in August 1955. Bakelite Co. is a division of Union Carbide Corp.

polymer and further mentions that the treated webs may be heat sealed by using various heat sensitive adhesives, and maintaining that the film modification techniques of the two other references are equivalent to the oxidative preparatory treatment of Keller et al., the examiner stated:

It is thought to be obvious that the process of Keller et al. may be utilized with the oriented high density polyolefin films of Grimminger et al. with any suitable heat sealing adhesive such as the polyvinyl butyral of Swerlick.

This rejection was sustained by the board with the following addendum:

* * * However, it appears to us that the Examiner should have included Traver as a subsidiary reference, inasmuch as these claims recite the step of applying the adhesive to only one of the surfaces to be bonded.

Product claims 1, 2 and 14–16, each containing the recitation "and having only one such modified surface coated with a composition selected from * *," were also rejected as "failing to properly define the invention." The examiner felt that this limitation, which he termed a "process limitation" did not make it clear that the two treated film surfaces are bonded together by means of the single adhesive layer which must be coated prior to sealing to one treated film surface and subsequently adhered to the second treated film surface. The quoted limitation, he thought, "does not indicate the position of the first treated film surface with respect to the second treated film surface." The board agreed, pointing out additionally that the presence of the word "comprising" in the claims does not require both surfaces to be bonded to the same adhesive layer.

## OPINION

We have set out rather extensively the pertinent portions of the reference disclosures alleged to show the state of the prior art and have detailed the rationale of the Patent Office in applying these disclosures against the claims before us because the only issue really determinative of this appeal is the propriety of combining those references. Appellants have attacked the cited references one by one, pointing out the deficiencies of each and arguing in conclusion that none of the references suggests the invention as claimed. It is suggested, for example, that Traver and Grimminger et al. are not pertinent since "neither * * * relates to heat sealing," and that Keller et al. and Meier possess "needle-in-the-haystack-type" disclosures with respect to vinyl chloride-vinylidene chloride copolymers.

We have considered these and appellants' other contentions thoroughly but are not convinced that the Patent Office committed error in holding the appealed claims unpatentable over the combined teachings of the prior art within the purview of 35 U.S.C. § 103. We think that the references were "comprehensively and meticulously appraised by the examiner and the board." See In re Walker, 54 CCPA 1235, 374 F.2d 908, (1967). Each was used for what it fairly disclosed and taught to the art. As applied, taken collectively, the cited references do make out a case of obviousness with regard to each of the rejected claims.

The posture we have taken with regard to the rejections based on prior art makes it unnecessary to rule on the rejection predicated on claim language. The decision of the board is accordingly affirmed.

Affirmed.