57 CCPA

**Application of Robert W. BODLEY.**

**Patent Apeal No. 8318.**

United States Court of Customs and Patent Appeals.

May 28, 1970.

Richard G. Lione, Jack C. Berenzweig (Hume, Clement, Hume & Lee), Chicago, Ill., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for Commissioner of Patents; Jere W. Sears, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection on prior art under 35 U.S.C. § 103 of claims 18–21, all the claims remaining in appellant's application entitled "Seal."[1]

The invention is readily understood by reading sole independent claim 18 in conjunction with Figs. 1 and 2 of the drawings, reproduced below:

18. In a floating roof storage tank [10, Fig. 1], a resilient foamed material sealing arrangement [20] for providing light but effective sealing between the periphery of the roof [11] and the wall [15] of the tank while maintaining the resiliency of said foamed material and retarding the tendency of said foamed material to develop a compression set, comprising: a flexible toroidal envelope [23] in the space [16] between said floating roof and said wall, upper attachment means [30] extending horizontally around said envelope, lower attachment means [31] extending horizontally around said envelope, said upper and lower attachment means being annularly spaced on the vertical cross-sectional circumference of said envelope so as to define between them an innermost side [33] of said envelope which spans substantially less than 180 degrees of said cross-sectional circumference and an outermost side [32] which spans substantially in excess of 180 degrees thereof, means [50, 51] securing said upper attachment means to the periphery of the roof, means [40, 43, 45, 46] securing said lower attachment means to the periphery of the roof, a core [24] of relatively highly resilient

1. Serial No. 334,752 filed December 31, 1963.

foamed material in said envelope urging it against the periphery of the roof and the tank wall, said core having a toroidal configuration and a normal cross-sectional area approximately equal to or only slightly less than the corresponding cross-sectional area of said envelope, the normal cross-sectional diameter of said core being substantially greater than the width of said space whereby in operation said core is compressed in said envelope to a cross-sectional area less than said envelope, the relatively greater span of said outermost envelope side permitting said core of foam to roll so that its compression axis rotates through up to 90 degrees when the direction of travel of the roof changes, in upward travel of the roof said flexible foam core rolling downwardly with said envelope against said tank wall until its compression axis has rotated a maximum of 90 degrees after which further rolling is restrained by the tautness of said envelope between said tank wall and said upper connection, in downward travel, of the roof said flexible foam core rolling upwardly with said envelope against said tank wall until its compression axis has rotated a maximum of 90 degrees after which further rolling is restrained by tautness of said envelope between said tank wall and said lower connection.

Dependent claims 19–21 further define the core cross-sectional configuration and diameter.

The following British patents were relied upon as references:

Greengate and Irwell
 Rubber Co., Ltd.
 (Greengate) 882,189 November 15, 1961

Chicago Bridge &
 Iron Co.
 (CB&I) 884,070 December 6, 1961

CB&I discloses a gas-inflated, self-centering seal for a floating roof storage tank. In Fig. 1 of the reference, below, can be seen an inflated annular sealing tube 13 anchored to an upper portion 14 and a spaced lower portion 15 on the skirt 12 of roof 11, the outer portion of the tube bearing against the wall of tank 10. The reference states:

It is considered desirable but not absolutely essential that both upper tabs 14 and lower tabs 15 be provided, because friction of that portion of the tube in contact with the shell during periods of vertical movement of the tank roof will cause the tube to be distorted either upwardly or downwardly, and a provision of both upper and lower anchors or tabs serves to keep the tube in approximately the same position both when the roof is moving upwardly and when it is moving downwardly.

CB&I Fig. 1

[A1735]

Greengate discloses the use of foamed polyurethane as a tank seal envelope filler. The filler or core *d* is trapped between the tank wall and roof edge and may have a circular or rectangular cross-section as shown in Figs. 1 and 3 reproduced below:

—FIG. 1.—

—FIG. 3.—

**Greengate Figs, 1 and 3**

[A1736]

The examiner rejected the claims as unpatentable over CB&I in view of Greengate, taking the view that it would have been obvious to one of ordinary skill in the art "[t]o substitute for the gaseous type compressible material of the seal shown in Fig. 1 of the primary reference a toroidal foamed plastic compressible material of circular cross section and of less cross sectional area than the cross sectional area of the envelope 13 as taught in the secondary reference * * *."

The board affirmed, stating:

It appears to us that persons of ordinary skill in the art approaching the seal shape and operation depicted in the base reference would find it obvious to replace the pressure-producing resilient ring by a ring rendered resilient through the use of foamed material. It appears to us that it would be obvious to fill the seal space of the primary reference with such deformable material while the seal was unconfined. The result would present a relaxed contour greatly exceeding the space in the assembly and upon assembly produce a resilient force comparable to the gas pressure form.

Whether such undistorted form be circular or polygonal in cross section does not appear to bear any relationship to its final functioning or to be unobvious. The enclosure of the primary reference has the stated sectors and any seal so held will clearly tilt a bit upon the reversal of motion along the wall. This is all that is required by claim 18.

Appellant's argument in support of his position that the board erred is that none of the art, taken individually or collectively, makes a teaching which would be the basis for obviousness. Moreover, it is urged, even if the reference combination is proper, the claimed structure is not anticipated. Finally, appellant contends that the board's position that "all that is required by claim 18" is that the seal "tilt a bit" is a misinterpretation illustrating a lack of proper understanding of the invention and grounds in itself for reversal.

The *primary* distinction between the prior art and the claimed invention, urged in appellant's brief before us and set forth in the specification, is concerned with the controlled rolling of the core or the tank roof moving up and

down within the tank. An amount of rolling "is calculated to assure minimal shear stresses being developed in the core as the direction of travel of the roof 11 changes, while shifting the axis of compression of the core 24 to minimize compression set along any one axis." This feature is expressed in the claim language "the relatively greater span of said outermost envelope side permitting said core of foam to roll so that its compression axis rotates through up to 90 degrees when the direction of travel of the roof changes * * *."

We are, however, unconvinced of error in the board's position. The claimed structural features of the envelope are strikingly similar to those shown in the reference. The claim calls only for an envelope permitting rolling "through up to 90 degrees" and we think it apparent that the envelope construction of the reference disclosure would inherently permit a degree of rolling within the claim language. This view is further evidenced by the fact that the quoted portion of CB&I, appearing hereinbefore, contemplates movement and distortion. We are not convinced on this record that appellant's invention produces results not produced by the prior art.

 While we agree with appellant that hindsight reconstruction of the prior art in light of an applicant's disclosure is to be vigorously guarded against and condemned, we feel that apposite here is this court's statement in In re Rosselet, 347 F.2d 847, 52 CCPA 1533 (1965):

* * * it is our view that the test of obviousness is not express suggestion of the claimed invention in any or all of the references but rather what the references taken collectively would suggest to those of ordinary skill in the art * * *.

Properly evaluated and considered as a whole, the references here render obvious the claimed invention. The decision of the board is, therefore, affirmed.

Affirmed.