**In re Yujiro YAMAMOTO, Appellant,**

**and**

**Dictaphone Corp., Intervenor.**

**Appeal No. 84–557.**

United States Court of Appeals, Federal Circuit.

Aug. 7, 1984.

Grover A. Frater, Santa Ana, Cal., argued for appellant.

Thomas E. Lynch, Washington, D.C., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol., and Jere W. Sears, Deputy Sol., Washington, D.C.

Gregor N. Neff, New York City, argued for intervenor. With him on the brief were William S. Frommer, New York City, and Melvin J. Scolnick, Stamford, Conn., of counsel.

Before DAVIS, BALDWIN and MILLER, Circuit Judges.

BALDWIN, Circuit Judge.

This appeal is from a decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) in a reexamination proceeding involving U.S. Patent No. 3,747,228 (Yamamoto) issued to appellant, Yamamoto. The board affirmed rejection of claims 1–3, 7, and 8 as unpatentable under 35 U.S.C. § 103 over U.S. Patent No. 3,300,586 (Shepard) and of claim 4 over Shepard in view of U.S. Patent No. 3,550,-289 (Orita). We affirm.

*Procedural History*

Appellant filed suit for infringement of the Yamamoto patent in the United States District Court for the Central District of California against Dictaphone Corporation (Dictaphone). Dictaphone requested reexamination of the patent in suit and is an intervenor in this appeal. The District Court action was stayed pending the outcome of the reexamination proceeding.

*The Invention*

The Yamamoto patent describes and claims an interview machine. The machine asks a question, records the interviewee's answer, then asks another question. This alternating question and answer sequence is repeated until the interview is completed. The machine detects the continuance and the end of each question. It also detects the continuance and the end of each answer. Using this detected information, the machine determines the timing of questions and the periods allowed for response. The machine may be programmed to repeat a question if no response is given, to go on to the next question, or to terminate the interview. Claim 1 of the patent recites appellant's invention as follows:

1. An interview machine comprising:

a question storage memory adapted for storing a series of questions to be asked of an interviewee, and having associated means for retrieving each question from the memory and communicating it in audible form to the interviewee;

an answer storage memory adapted for storing a series of answers given by the interviewee;

manually operable means for causing the first question of the series to be communicated to the interviewee; and

timing and control means responsive if the question is not answered within a predetermined period of time for causing the next question of the series to be communicated to the interviewee, and responsive if an answer is initiated within said predetermined period of time for

delaying the retrieval and communication of the next question until the answer has been completed;

whereby the interviewee upon initiating his answer within said predetermined period of time may give as long as answer as he desires, and upon completion of his answer the machine automatically communicates the next question of the series to him.

## The Prior Art

The Shepard patent describes a telephone answering machine. In addition to simply answering the telephone, it asks the caller questions and records answers to those questions. The caller may give an answer for as long as he likes. The next question will be posed when the previous answer is completed. If a question is not answered within a certain time, the machine automatically asks the next question. The machine described in Shepard is also capable of distinguishing between "YES" and "NO" answers and selecting the next question according to the answer given. In addition, the machine may control the operation of several different tape recorders and telephones simultaneously.

The Orita patent describes a language teaching machine which delivers a series of questions or instructions to headphones worn by students. Students' answers are spoken into a microphone and are recorded one after another in a tape recorder. The student may answer for as long as he or she wants. When an answer is completed, the next question is automatically sent to the headphones.

## OPINION

■ The first issue presented by this appeal is whether the board adopted the correct standard of claim interpretation in reexamination proceedings. The board said that claims subject to reexamination will "be given their broadest reasonable interpretation consistent with the specification, and limitations appearing in the speci-

fication are not to be read into the claims." In adopting this standard for reexamination proceedings, the board followed *In re Reuter,* 651 F.2d 751, 210 USPQ 249 (CCPA 1981), where the United States Court of Customs and Patent Appeals approved use of the broadest reasonable interpretation standard in reissue proceedings.

Appellant contends that the adoption of this standard for interpreting claims subject to reexamination was error. Appellant urges us to require the PTO to apply a rule of claim construction adopted by Federal District Courts when the validity of an issued patent is in question. Appellant relies on *Photo Electronics Corp. v. England,* 581 F.2d 772, 199 USPQ 710 (9th Cir.1978), where the United States Court of Appeals for the Ninth Circuit described its approach to claim construction in an infringement action in the following manner:

The starting point is the rule that patent claims should be construed liberally to uphold the patent's validity rather than to destroy the inventor's right to protect the substance of his invention . . . .

*Id.* at 776, 199 USPQ at 714 (citations omitted).\* We affirm the board's decision to give claims their broadest reasonable interpretation, consistent with the specification, in reexamination proceedings.

■ The PTO broadly interprets claims during examination of a patent application since the applicant may "amend his claims to obtain protection commensurate with his actual contribution to the art." *In re Prater,* 415 F.2d 1393, 1404–05, 162 USPQ 541, 550, 56 CCPA 1381, 1395 (1969). This approach serves the public interest by reducing the possibility that claims, finally allowed, will be given broader scope than is justified. Applicants' interests are not impaired since they are not foreclosed from obtaining appropriate coverage for their invention with express claim language. *Id.*

---

\* In a district court context, we too have said that claims should be construed, if possible, to sustain their validity. *ACS Hosp. Systems, Inc. v. Montefiore Hosp.,* 732 F.2d 1572, 1577, 221 USPQ 929, 932 (Fed.Cir.1984); *Carman Indus., Inc. v. Wahl,* 724 F.2d 932, 937 n. 5, 220 USPQ 481, 485 n. 5 (Fed.Cir.1983).

at 1405 n. 31, 162 USPQ at 550 n. 31, 56 CCPA at 1396 n. 31.

■ An applicant's ability to amend his claims to avoid cited prior art distinguishes proceedings before the PTO from proceedings in federal district courts on issued patents. When an application is pending in the PTO, the applicant has the ability to correct errors in claim language and adjust the scope of claim protection as needed. This opportunity is not available in an infringement action in district court. District courts may find it necessary to interpret claims to protect only that which constitutes patentable subject matter to do justice between the parties. *Id.* at 1404, 162 USPQ at 550, 56 CCPA at 1395.

The same policies warranting the PTO's approach to claim interpretation when an original application is involved have been held applicable to reissue proceedings because the reissue provision, 35 U.S.C. § 251, permits amendment of the claims to avoid prior art. *In re Reuter*, 651 F.2d at 756, 210 USPQ at 253–54. The reexamination law, set forth below, gives patent owners the same right:

> In any reexamination proceeding under this chapter, the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, in order to distinguish the invention as claimed from the prior art cited under the provisions of section 301 of this title, or in response to a decision adverse to the patentability of a claim of a patent. No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter.

35 U.S.C. § 305 (1982).

Appellant therefore had an opportunity during reexamination in the PTO to amend his claims to correspond with his contribution to the art. The reasons underlying the PTO's interpretation of the claims in reissue proceedings therefore justify using the same approach in reexamination proceedings.

■ On the merits of claim 1, the board correctly concluded that the Shepard patent exactly corresponds to appellant's claim except for the following feature: "an answer storage memory adapted for storing a series of answers given by the interviewee." This is also, in our view, the only difference between Shepard and claims 2, 3, 7, and 8.

Appellant argues this language of claim 1 requires all of the answers to be stored one after another and that they be stored in that form indefinitely. Shepard discloses recording each answer on a magnetic tape. It is not clear from Shepard whether the answer is permanently stored or whether it is erased after use. The board found that Shepard teaches a means for storing the answers for later use if desired. Specifically, according to Shepard, a caller may be invited to leave a name and telephone number to permit completion of any desired business. From this the board inferred, appropriately in our view, that one of ordinary skill in the art reading Shepard would have understood the advantages of recording and storing answers and how to do it. The board concluded that storing the answers in a series, one answer after another, would have been within the ability of a person of ordinary skill in the art. Claims 2 and 7 are the only other independent claims in the application. Appellant has not identified any other differences between claims 2, 3, 7, or 8, and the Shepard patent that would require overturning the board's decision.

The board rejected claim 4 over the combined teachings of Shepard and Orita. At issue here is the means used to stop the storage tape drive when a question is completed. Claim 4, which is dependent on claim 2, requires:

> a first timer coupled to the output of said first signal presence detector, ... the outputs of said first and second timers being coupled to said drive means for respectively stopping or starting the question storage tape....

Shepard does not use a timer to stop a question storage tape drive after a question is transmitted. Orita, however, does teach this feature. Orita teaches using a timer in the form of an integrating circuit in conjunction with a Schmidt trigger to

automatically stop the instructional tape recorder when one of the instructional programs ends. An oral response (or answer) to the instruction program is then recorded on the practice tape recorder. Another timer detects the end of the answer and causes the practice tape recorder to turn off and the instructional tape recorder to turn on and deliver the next instruction. We agree with the board that this teaching provides evidence that Yamamoto's inclusion of a timer to shut off the question storage tape after a question has been transmitted would have been obvious to one of ordinary skill in the art.

■ Although appellant argues that adding Orita's timer to the Shepard device would make the device inoperable, we have said before that a claim may have been obvious in view of a combination of references even if the features of one reference cannot be substituted physically into the structure of the other references. *In re Sneed*, 710 F.2d 1544, 1550, 218 USPQ 385, 389 (Fed.Cir.1983); *Orthopedic Equipment Co. v. United States*, 702 F.2d 1005, 1013, 217 USPQ 193, 200 (Fed.Cir.1983).

■ Appellant also argues the patentability of claims 9–11. However, we agree with the solicitor's contention that claims 9–11 have been abandoned. The examiner originally indicated claims 9–11 were allowable. After considering appellant's appeal on the rejected claims, the board remanded the application to the examiner recommending that claims 9–11 be rejected under 35 U.S.C. § 103. The board further required the case to be returned to the board, after proceedings were completed on remand, so the board could either adopt its earlier decision as final or enter a new decision. 37 C.F.R. § 1.196(d) (1983). The board set a one month period for appellant to make an appropriate amendment or showing of facts, or both, to overcome the rejection. Appellant did not respond within the one-month period. The examiner restated the rejection and gave appellant an additional month to respond. Appellant did not respond to the rejection nor did he appeal to the board from the rejection. The case was then returned to the board for final action. As the regulation permits, the board, without comment and without argument, affirmed rejection of all claims. Since appellant neither responded to the rejection of claims 9–11 before the primary examiner nor appealed the rejection to the board, claims 9–11 are treated as having been abandoned. *See* 37 C.F.R. § 1.196(d); *id.* § 1.550(d).

For the foregoing reasons, the board's decision is *affirmed.*

AFFIRMED.

JACK R. MILLER, Circuit Judge, concurring in part and dissenting in part.

I dissent with respect to claim 4, the obviousness of which is not supported by Shepard in view of Orita. Indeed, stopping Shepard's question tape drive in accordance with Orita would stop the answer recording tape, and, without a recorded answer, the next question would not be asked. The "bodily incorporation" point made by the majority opinion is not responsive to appellant's position that the operation of the devices of Orita and Shepard is so different that one of ordinary skill in the art would not view this as a natural and logical combination. *In re Walker*, 374 F.2d 908, 913, 153 USPQ 180, 185, 54 CCPA 1235, 1240 (1967).