64 F.3d 673
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re BOSE CORPORATION.
 No. 95-1056.
 United States Court of Appeals, Federal Circuit.
 July 18, 1995.
 
 Before ARCHER, Chief Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 Bose appeals the Board of Patent Appeals and Interferences' (Board) reconsideration decision upholding the examiner's rejection in a reexamination proceeding of claims 1-5 of Bose's U.S. Patent No. 4,282,605 (the '605 patent) as obvious under 35 U.S.C. Sec. 103. Because the Board's findings on the four Graham factors were not clearly erroneous and its conclusion on the ultimate question of obviousness was not in error given those findings, we affirm.
 
 BACKGROUND
 
 2
 Bose filed a patent application, entitled "Sound Reproducing with Remote Amplifying Transducer," in October, 1979, for an invention directed to a vehicle sound reproducing apparatus that uses light pipes (fiber optic cables) along with appropriate electro-optical and electro-acoustical transducers, to connect a sound signal source with a receiving location remote from the source location. Based on that application, the '605 patent issued on August 4, 1981. Alpine Electronics (Alpine), the intervenor here on appeal, requested reexamination.
 
 
 3
 Claim 1, representative of the claims at issue, reads as follows:
 
 
 4
 1. Vehicle sound reproducing apparatus comprising,
 
 
 5
 a sound signal source for providing a sound electrical signal representative of sound at a source location in a vehicle,
 
 
 6
 source electro-optical transducing means at said source location for transducing said sound electrical signal into a corresponding light signal,
 
 
 7
 receiving electro-optical transducing means at a receiving location in said vehicle remote from said source location for converting a received light signal into a corresponding received sound electrical signal,
 
 
 8
 power amplifying means for amplifying said received sound electrical signal to provide an amplified sound signal,
 
 
 9
 electro-acoustical transducing means for transducing said amplified sound signal into a corresponding sound signal,
 
 
 10
 and light pipe means for intercoupling said source and receiving electro-optical transducing means.
 
 
 11
 On reexamination, while allowing other claims, the examiner rejected claims 1-5 under 35 U.S.C. Sec. 103 as being unpatentable over either U.S. Patent No. 4,135,202 (Cutler), or an article in Electronics, (Electronics) in view of French Patent No. 2,247,032 (Reibaud). He found that both Electronics and Cutler disclosed the subject matter of the claims--the only difference between the claimed invention and these primary references being that they do not specify a vehicle environment--and that Reibaud disclosed a fiber optic system in a vehicle environment such as in an aircraft for the purpose of overcoming the problem of interference. Therefore, the examiner concluded that in view of Reibaud it would have been obvious to use the optical communication system of Electronics or Cutler in a vehicle such as an aircraft or automobile in order to overcome the problem of electrical noise, or interference.
 
 
 12
 The Board adopted the examiner's findings and rationale. Additionally, it found that Reibaud demonstrated that it was known to an ordinarily skilled artisan to employ fiber optic cables in place of electrical wires for the purpose of avoiding interference in communication systems for a vehicle. Moreover, the Board determined it was immaterial that none of the references specifically taught an audio system in an automobile because 1) a skilled artisan would have found it obvious to employ the teaching of using optical fibers in place of electrical wires in vehicle audio systems in view of the totality of teachings of the references and the common knowledge of one skilled in the art, and 2) Cutler and Electronics dealt with a "sound reproducing apparatus" such that it would have been obvious to apply their teachings to various environments, including a vehicle. On reconsideration, the Board affirmed its previous findings and conclusions.
 
 DISCUSSION
 
 13
 We review the Board's ultimate conclusion of obviousness de novo, and without deference to the Board's determination. In re Van Geuns, 988 F.2d 1181, 1184, 26 USPQ2d 1057, 1059 (Fed.Cir.1993). We review the factual findings underlying that conclusion, i.e., the teachings of the prior art, the differences between the prior art and the claimed invention, the level of ordinary skill in the art at the time of the invention, and objective indicia of nonobviousness, under the clearly erroneous standard. Id.
 
 I.
 
 14
 Bose first argues that the Board clearly erred in finding that the only difference between the conventional optical fiber phone system disclosed in the Electronics reference or the broadcasting system of Cutler, and the claimed invention, was that Electronics and Cutler did not explicitly state that those systems could be installed in a vehicle. Specifically, Bose concedes that all of the elements recited in its claims are disclosed by the Electronics (or Cutler) reference except three: (1) "vehicle sound reproducing apparatus"; (2) "a sound signal source for providing a sound electrical signal representative of sound at a source location in a vehicle"; and (3) "receiving electro-optical transducing means at a receiving location in said vehicle remote from said source location." Thus, we address only Bose's arguments that the Board clearly erred in finding these elements to be disclosed by Electronics.[1]
 
 
 15
 (1) vehicle sound reproducing apparatus:
 
 
 16
 Claims in reexamination must "be given their broadest reasonable interpretation consistent with the specification, and limitations appearing in the specification are not to be read into the claims." In re Yamamoto, 740 F.2d 1569, 1571, 222 USPQ 934, 936 (Fed.Cir.1984). In this case, the Bose patent specification nowhere expressly defines "sound reproducing apparatus." Although the claims refer to "vehicle sound reproducing system" and "vehicle sound system," and the specification's "Background of the Invention" section states that "[h]igh fidelity sound systems for vehicles have met with wide acceptance," the background section does not purport to define Bose's "sound system" as limited to a "high fidelity sound system," and the claims do not require a "high fidelity" sound system. In any event, the definition of "high fidelity" given in the specification is simply: "faithfully transmitting sound signals." Thus, the Board's construction of the Bose claims as encompassing a vehicle sound reproducing apparatus generally and not as limited to a high fidelity audio "stereophonic" system for a car as Bose contends, is not in error.
 
 
 17
 Moreover, we do not view the Board's determination that a fiber-optic phone system is a system for faithfully transmitting sound signals as clearly erroneous. Nor do we find persuasive Bose's arguments that the "vehicle" limitation in the preamble precludes the Board's decision. Bose's specification does not limit a vehicle to a car, as Bose suggests, and his preamble refers to "vehicle" without further limitation. Thus, Reibaud suggests use of the claimed system in a "vehicle," as that term is used in Bose's claims. Moreover, the Board's finding that one skilled in the art would have had the motivation to utilize the technology disclosed in Electronics, or Cutler, in a vehicle is not clearly erroneous since the Electronics reference does not limit utilization of its technology to a particular environment and, indeed, invites utilization in various environments.
 
 
 18
 (2) a sound signal source for providing a sound electrical signal representative of sound at a source location in a vehicle:
 
 
 19
 Bose's second argument that the prior art does not disclose a sound signal source for providing a sound electrical signal representative of sound at a source location in a vehicle also fails. Bose argues that, reading his patent as a whole, with the examples in the specification including a stereophonic sound system with a tape player or tuner near the automobile dash, requires the more limited "audio system" interpretation of the claim language. In the patent's description of preferred embodiments, however, the listed examples are introduced with the phrase "such as" and are thus not presented as an exhaustive list or definition of the sound signal. Nor does the patent's specification limit any claim terms to a "tuner or tape player." Consequently, limiting the recited "sound signal source" to a "music" signal source as suggested by Bose, would violate In re Yamamoto 's prohibition against reading limitations appearing only in the specification into the claims. See id.
 
 
 20
 Moreover, the Board correctly determined that the Electronics phone system provided an "acousto-electrical transducer" as a source of a sound electrical signal, and thus disclosed the "sound signal source" element. Beyond question the transducer converts sounds to sound electrical signals. Because it is the source of a sound electrical signal, the transducer falls within the broadest reasonable interpretation of "sound signal source" in Bose's claims. Thus, Bose fails to show that the Board's determination that the sound signal source element is disclosed in Electronics is clearly erroneous.
 
 
 21
 (3) receiving electro-optical transducing means at a receiving location in said vehicle remote from said source location:
 
 
 22
 Finally, Bose argues that Electronics does not disclose an "electro-optical transducer" as the "receiving means." The Board found that the Electronic's "receiving means," an optical receiver, is the same or equivalent to Bose's "electro-optical transducer" receiving means. The Electronics receiver is explicitly an optical-to-electrical signal converter, with the receiver remote from the source. Additionally, Bose admits that Reibaud discloses the receiving means as claimed. Thus, the Board did not clearly err in finding that the Electronics system discloses Bose's receiving means, and that the Electronics reference fully satisfies all of the claim limitations except that it is not explicitly for use in a vehicle.
 
 II.
 
 23
 Bose also argues that the Board clearly erred in finding that Reibaud suggests installation of an optical fiber sound system in a vehicle to eliminate electrical noise pickup. Bose primarily contends that Reibaud does not, as the Board determined, teach that fiber optics eliminates noise in vehicles because it does not teach the elimination of the relevant type of noise, i.e., electrical noise. We disagree.
 
 
 24
 The Board found that "Reibaud is simply used as a teaching of employing fiber optics as a communication link in a vehicle in order to avoid noise interference regardless of whether that noise is caused electrically or ambiently." According to the Board, Reibaud made it clear that it was known to one skilled in the art to employ fiber optic cables in the place of electrical wires to avoid interference in communication systems for use in a vehicle. Thus, the Board's analysis was not limited to Reibaud's teaching the elimination of ambient noise.
 
 
 25
 Moreover, we cannot discern clear error in the Board's related determinations. In addition to the discussion in the Reibaud patent, which itself teaches that traditional telephone connections between stations in an airplane are subject to "parasitic" noise that may be avoided through "a microphone and a telephone installation that cannot pick up parasitic noise" where the connection in the telephone installation is an optical fiber rather than an electrical conductor, there is other evidence in the record indicating the level of ordinary knowledge and skill in the art. For example, the Request for Reexamination referenced a prior patent, U.S. Patent No. 4,052,611 (Fish), indicating that electrical cables in aircraft should be replaced with optic fibers to avoid electrical noise. Similarly, a Japanese application cited as a reference recognized that electrical wiring is subject to induced electrical noise in automobiles, and suggested use of optical fibers because they are not influenced by adjacent electrical devices. These references corroborate the Board's sense from its analysis of Reibaud as to the content of the prior art. Thus, the Board did not clearly err in determining that artisans generally knew to use fiber optics in vehicles to avoid electrically induced noise, and would have understood Reibaud's teachings as being to that same effect.
 
 III.
 
 26
 Finally, Bose argues that the Board did not properly weigh Bose's evidence of its licensing agreements with Alpine and Pioneer, or the declaration of its employee Timothy Holl that the applied references would not have suggested combination of their teachings to obtain the subject matter of the claims on appeal.
 
 
 27
 The Board found that the licensing agreements were not sufficiently probative to overcome the prima facie case created by the examiner on the references of record. We cannot conclude, given the minimal costs of the licenses and the potential that Pioneer and Alpine entered into the licenses for other reasons such as avoidance of litigation, that the Board's conclusion was erroneous. Nor do we fault the Board's conclusion that Holl's declaration was not probative on the issues raised in this case. We therefore consider Bose's arguments regarding the licensing agreements and the Holl declaration unpersuasive.
 
 IV.
 
 28
 At oral argument, counsel for Bose stressed that the inventors and authors of the cited references were addressing a technological problem different from that addressed by Bose. According to counsel, Bose was interested in high quality amplification of music in the interior of an automobile and overcoming interference noises emanating from electrical devices present in and around an automobile dashboard from degrading that quality. The others were not concerned with music or automobiles but primarily with voice amplification where the principal goal of the contribution to the art was fewer and simpler parts to provide adequate sound amplification where the source of the sound was remote. However true this may be, it is axiomatic that a reference may be properly cited not merely for what it claims or its contribution to the advancement of the art, but for all it teaches including recitation of learning long known in the art. Accordingly, we must look to all parts of the Electronics article and all parts of the Cutler and Reibaud patents, including the specifications, and must cumulate all the teachings found therein. The more limited viewpoint urged by Bose's counsel is not in accordance with settled case law of this court and its predecessor.
 
 CONCLUSION
 
 29
 The Board did not err in rejecting claims 1-5 as obvious over either Cutler or Electronics in view of Reibaud. Accordingly, we affirm the reconsideration decision of the Board.
 
 
 
 [1]
 The Board found that both Cutler and Electronics disclosed all the elements of the Bose patent except for a limitation that the system be in a vehicle. However, both parties address their arguments primarily toward the Electronics article