91 F.3d 171
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re PENTEL OF AMERICA, LTD.
 No. 95-1206.
 United States Court of Appeals, Federal Circuit.
 June 24, 1996.
 
 Before PLAGER, LOURIE, and RADER, Circuit Judges.
 Opinion for the court filed by Circuit Judge PLAGER. Dissenting opinion filed by Circuit Judge RADER.
 PLAGER, Circuit Judge.
 
 
 1
 Pentel of America, Inc. ("Pentel") appeals the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences ("Board") in Appeal No. 94-2254, the reexamination proceeding involving United States Patent No. 5,015,111 (the "'111 patent"), assigned to Pentel. The Board sustained the final rejection by the examiner of claims 1-10, 18-35, 37-38, and 40 of Reexamination Application No. 90/002,698 under 35 U.S.C. § 103. We reverse the decision and remand the case to the Board.
 
 BACKGROUND
 
 2
 The '111 patent discloses an eraser dispenser for selectively extending and retracting an elongated eraser, and writing instruments, such as mechanical pencils, incorporating the eraser dispenser. Figure 5 of the '111 patent, reproduced below, illustrates a pencil including the eraser dispenser.
 
 
 3
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 4
 The eraser dispenser includes an inner tubular member or barrel 3, and an eraser 7 disposed in the inner tubular member. The inner tubular member is mounted within a front barrel 2 and a rear barrel 1. The eraser can be extended or retracted from the dispenser by twisting the rear barrel.
 
 
 5
 A request for reexamination of the '111 patent was filed with the United States Patent and Trademark Office ("PTO"), alleging substantial new questions of patentability as to all twenty claims of the patent, based in part on prior art not previously of record, including Japanese Patent Document 61-81987 ("Kobayashi") and United States Patent No. 4,386,865 to Kageyama et al. ("Kageyama"). The PTO granted the request for reexamination. Following a first Office Action, Pentel canceled claims 11-17 and added new claims 21-40. In a final Office Action dated April 7, 1993, the examiner rejected claims 1-10, 18-35, 37-38, and 40 under 35 U.S.C. § 103 as obvious over Kobayashi in view of Kageyama, and, with respect to claim 10, further in view of United States Patent No. 2,469,631 to Broder. The examiner indicated that claims 36 and 39 were patentable over the prior art.
 
 
 6
 Claim 1, which is representative of the claims at issue, is set forth below (emphasis added):
 
 
 7
 1. A writing instrument comprising: a front tubular member having a writing tip at the front end thereof; advancing means axially displaceable in forward and rearward directions for incrementally advancing a writing medium lengthwise in the forward direction through the writing tip in response to forward axial displacement of the advancing means; an inner tubular member having a front portion disposed within and encircled by the front tubular member and having a rear portion; a rear tubular member disposed over and encircling the rear portion of the inner tubular member; means mounting the rear and inner tubular members for axial displacement together as a unit in forward and rearward directions relative to the front tubular member to effect forward axial displacement of the advancing means to thereby incrementally advance the writing medium; means mounting the rear tubular member for angular displacement in opposite directions relative to the front and inner tubular members; holding means disposed within the inner tubular member for releasably holding an elongate eraser; and means mounting the holding means to undergo axial displacement in forward and rearward directions within the inner tubular member in response to angular displacement of the rear tubular members in opposite directions to thereby axially retract and extend the eraser relative to the rear end of the rear tubular member.
 
 
 8
 Claim 36 depends from claim 1, adding the limitation "wherein the inner tubular member is one piece." As noted above, claim 36 was determined to be allowable in reexamination. Accordingly, Pentel and the PTO agree that if "inner tubular member" in the rejected claims is interpreted to be a "one piece inner tubular member," then all of the rejected claims are allowable.
 
 DISCUSSION
 
 9
 Claim construction is a matter of law over which we exercise complete and independent review. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995), aff'd, 116 S.Ct. 1384 (1996). To determine the meaning of claims, we consider the claim language, the specification, and the prosecution history. Id. In a reexamination proceeding, claims must "be given their broadest reasonable interpretation consistent with the specification." In re Yamamoto, 740 F.2d 1569, 1571, 222 USPQ 934, 936 (Fed.Cir.1984). Pentel addresses only claims 1 and 18, and does not separately argue the patentability of claims 2-10, 19-35, 37-38, and 40. Consequently, all claims stand or fall together with independent claims 1 and 18, from which the others depend. See, e.g., In re King, 801 F.2d 1324, 1325, 231 USPQ 136, 137 (Fed.Cir.1986).
 
 
 10
 The '111 patent specification states that the tubular members "are commonly referred to in the art as barrels." It does not, however, state whether the inner tubular member may comprise more than one piece. The patent drawings show only a one-piece member. The claims and specification state that the inner tubular member has a front portion disposed in the front tubular member and a rear portion disposed in the rear tubular member. The PTO agrees that the preferred embodiment illustrated in the specification shows a one-piece inner tubular member, but argues that this embodiment does not restrict the claims. Accordingly, the PTO's position is that that broadest reasonable interpretation of "inner tubular member" is an inner tubular member that may include more than one piece.
 
 
 11
 The specification also states that the invention described should not be limited to the specific embodiment described. It continues: "For example, if it is desired to construct the eraser dispenser as a separate device which is not incorporated in a writing instrument, ... the inner barrel 3 would be severed...." (emphasis added). The statement that the inner barrel 3 would have to be severed to form a separate eraser device suggests that this inner tubular member is one piece when incorporated in a writing device. Because each of the claims recites a writing instrument or pencil, this suggests that the claimed "inner tubular member" is one piece.
 
 
 12
 The fact that the specification only discloses a one-piece inner tubular member and nowhere indicates that multiple members are contemplated is strong evidence of what the claim language means. Moreover, the asserted advantage of the invention requires a long inner tubular member. The claim differentiation argument of the PTO is also not persuasive because there is no indication that claim 36, which expressly recites a one-piece member, was intended to be narrower than claim 1. There was in fact indication that it was added for tactical reasons related to the reexamination.
 
 CONCLUSION
 
 13
 For all of the foregoing reasons, we conclude that the term "inner tubular member" in the rejected claims is properly interpreted as "one piece inner tubular member." The decision of the Board is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 COSTS
 
 14
 Each party to bear its own costs.
 
 
 15
 RADER, Circuit Judge, dissenting.
 
 
 16
 This case calls into question both this court's dedication to reexamination procedures and to uniform principles of claim interpretation. The integrity of reexamination procedures came into question when the Board sustained the examiner's final rejection of claims 1-10, 18-35, 37-38, and 40 of Reexamination Application No. 90/002,698 as obvious. During reexamination, at least three new references--Kobayashi, Kageyama, and Broder--arose for the first time. In light of this new prior art, the patentee and the PTO disputed the meaning of the term "an inner tubular member" in the '111 patent.
 
 
 17
 In accordance with normal patent claim usage and directives of this court, the PTO interpreted "an inner tubular member" to mean one or more inner tubular members. See, North Am. Vaccine v. American Cyanamid Co., 7 F.3d 1571, 1575-76 (Fed.Cir.1993) ("it is generally accepted in patent parlance that 'a' can mean one or more"). Indeed, as this court notes, the specification does not clearly indicate an intent to depart from normal patent parlance. Because the specification did not define "an inner tubular member," the PTO gave the term its ordinary and accepted meaning. See In re Paulsen, 30 F.3d 1475, 31 USPQ2d 1671 (Fed.Cir.1994). Moreover, to fulfill reexamination's purpose of resolving questions of patent validity without expensive infringement litigation, the PTO properly interpreted these claims as broad as reasonably possible, consistent with the unspecific specification. In re Etter, 756 F.2d 852, 858, 225 USPQ 1, 5 (Fed.Cir.1985); In re Yamamoto, 740 F.2d 1569, 1571, 222 USPQ 934, 936 (Fed.Cir.1984).
 
 
 18
 This PTO interpretation created a problem with Kobayashi, one of the new reexamination references. Kobayashi describes a pencil having a joint and an inner tubular member which snap together as an integral member. In combination, these components fit the Board's definition of the term "an inner tubular member." Thus, the Board agreed with the examiner that claims 1 and 18 were obvious in light of the prior art. Because all claims stand or fall together with independent claims 1 and 18, from which the others depend, the Board did not err in sustaining the examiner's final rejection of claims 1-10, 18-35, 37-38, and 40 in Reexamination Application No. 90/002,698.
 
 
 19
 Upon reexamination, Pentel added dependent claims 36 and 39, reciting the inner tubular member as one piece. The PTO allowed both of these claims over the newly discovered prior art because the prior art did not recite an inner tubular member as one indivisible piece. The one piece inner tubular member permits an elongated eraser dispenser of a length impossible to realize in Kobayashi. The Kobayashi eraser dispenser length is severely limited because the connector joint is inserted in the front of the inner tubular member. It is precisely because the inner tubular member is one piece allowing an elongated eraser which makes this invention patentable.
 
 
 20
 Thus, regardless of this appeal, Pentel has a patent on the elongated eraser dispenser disclosed in the '111 patent specification--which is precisely what the inventor invented. Reexamination served its purpose of limiting the claims to the scope of the invention, until this court stepped in to impose its understanding of "an inner tubular member." Because I perceive that the Board did its job exactly as this court instructed, I must dissent.